## LIZZIE BRESLIN ET AL., PLAINTIFFS IN ERROR, v. MARY DONNELLY, DEFENDANT IN ERROR.

### Argued March 10, 1911—Decided June 28, 1911.

1. Where the facts are in dispute, the issue whether a last will and testament was executed according to the formalities prescribed by law, presents a jury question.
2. Where the trial court, in the charge, referring to the testimony of a witness, instructed the jury that they must credit the witness's testimony, or, as the only alternative, brand him as a perjurer, such direction constitutes reversible error.

On error to the Essex Circuit Court.

For the plaintiffs in error, *Abner Kalisch*.

For the defendant in error, *Thomas J. Butler* and *Robert H. McCarter*.

The opinion of the court was delivered by

MINTURN, J. Timothy Donnelly died seized of certain lands in the city of Newark, and, some time prior to his death, devised the property to his widow, Mary Donnelly, the defendant, who was his second wife. The plaintiffs are his children by a first wife and the heirs of deceased children by representation.

The suit is in ejectment to recover the lands devised to the defendant, and to maintain the action the plaintiffs attacked the will upon the ground that the testator was not possessed at the time of its alleged execution of sufficient testamentary capacity to make a valid will.

The jury found for the defendant, and the plaintiffs assign error in two particulars:

*First.* It is objected that Dr. Robert J. Donnelly, a witness for defendant, and a son of the defendant, was allowed to testify that he was not interested in the outcome of the suit. He was then asked whether his mother, the defendant, had not

conveyed to him, since the death of his father, part of the property in suit, and he replied that she had conveyed property. This was followed by an inquiry as to what property she had conveyed to him and whether he had received more than one piece. This was overruled, and an exception was taken. In like manner questions were overruled directed to the eliciting of testimony from the witness as to whether he had conveyed the property back to the defendant, and what was the consideration for the deed, and when the property was conveyed back. He was allowed to say that he had not paid any consideration for the deed, but the other inquiries were overruled and exception taken.

The ground upon which the rulings were made by the learned trial court was the fundamental rule that the deed between the parties contained the best evidence of the transaction. This, of course, as to the direct transaction between the parties, is undoubtedly the law. But upon a collateral inquiry, such as that involved in the present question, the production of the documents involved is not necessary, since they are only incidentally involved in the main inquiry, and are not in issue in the case. *Hartman* v. *Dobar*, 51 *Vroom* 250; *Rice Ev.* 152, and cases; 17 *Cyc.* 469, and cases.

The remaining exceptions, taken to the charge of the learned trial court, also seem to require a reversal of this judgment.

The will was drawn by Mr. Butler, an attorney of the Supreme Court of this state, and he testified upon the trial that all the statutory requirements had been complied with in the execution of the will. The learned trial court, in charging the jury upon this phase of the case, referred to this testimony as "uncontradicted;" as "not inherently incredible;" and as "unimpeached;" and suggested that it "should be accepted as a correct statement of the facts;" and concluded by the direction: "and finding in the proof unchallenged evidence of all the statutory requisites, I conclude, and so instruct you, that the question of the statutory regularity must be answered in favor of the defendant—in favor of the will." And later in the charge, recurring to this phase of the case, the learned trial court charged: "It is quite apparent that if this testimony is

accepted as a correct and true account of what occurred, Mr. Donnelly had sufficient testamentary capacity. It is equally evident that if this testimony is rejected, the rejection necessarily implies that Mr. Butler has come here upon the stand and has knowingly testified to deliberate falsehoods. There is no escape from either of these two conclusions. If you accept Mr. Butler's account of the matter Mr. Donnelly knew what he was doing; if you reject it, you express your opinion that Mr. Butler's testimony is perjured."

It is manifest that in this instruction there is no allowance made by the learned trial court for those elements of probability and possibility affecting human testimony and its credibility, which very often supply the main theme for discussion by counsel before a jury, and with which in large part the learned dissertations of the school men in moral and mental philosophy, as well as the works of text-writers in the law upon the weight and value of human testimony under given circumstances, including the lapse of time, the failure of memory, the frailty of human nature and other considerations are so largely occupied. 1 *Best Ev.* 300.

In the first instance, it was for the jury, and not for the court, to determine, under the evidence, whether all the statutory requirements had been complied with in the execution of the will. And, finally, the designation of Mr. Butler as a perjurer, if his testimony failed of acceptance by the jury, left no middle ground for the jury to deal with that testimony. It made Mr. Butler the issue, and it thus tendered in effect a false issue, resulting in an *argumentum ad hominem,* in which the real question in the case was likely to be lost sight of in an effort to protect the name of a reputable member of the bar from the taint and aspersion of crime. The minds of the jurors, we must assume, were thus diverted by this direction from their real duty, which was to consider all the testimony and weigh it carefully; to test the credibility to be given to each witness by his apparent intention to speak the truth, and by the accuracy of his memory; to reconcile, if possible, the conflicting statements concerning material facts, and by thus reaching the truth of the matter in controversy effectuate by

their verdict substantial justice between the parties. *Rice Ev.* 788; *Smith* v. *Lehigh Valley Railroad Co.*, 170 *N. Y.* 394.

The judgment under review will be reversed, and a *venire de novo* is awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, CONGDON, SULLIVAN, JJ. 12.